NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**OWEN M. CUNNINGHAM,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2024-1392

---

Appeal from the United States Court of Federal Claims in No. 1:22-cv-01826-PSH, Judge Philip S. Hadji.

---

Decided: January 6, 2025

---

OWEN M. CUNNINGHAM, Lemon Grove, CA, pro se.

SONIA W. MURPHY, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY, DOUGLAS K. MICKLE.

---

Before LOURIE, STOLL, and CUNNINGHAM, *Circuit Judges*.

PER CURIAM.

Owen M. Cunningham filed a complaint before the Court of Federal Claims seeking relief for his involuntary discharge from the United States Army. The Court of Federal Claims granted the government's motion for judgment on the administrative record, denied Mr. Cunningham's cross-motion for judgment on the administrative record, and denied the government's motion to dismiss as moot. *Cunningham v. United States*, No. 22-1826, 2023 WL 8852607, at *1 (Fed. Cl. Dec. 21, 2023) ("*Decision*"). For the reasons discussed below, we *affirm*.

## I.    BACKGROUND

Mr. Cunningham first enlisted in the Army in 2005 as a helicopter mechanic. *Decision* at *1; App'x 2.[1] By June 2017, he served as a reserve warrant officer, but received a new active-duty appointment as a chief warrant officer two in June 2019. *Decision* at *1. In September 2020, Mr. Cunningham took a urinalysis test that detected cocaine at a value of 675 nanograms per milliliter, which exceeded the 100 nanograms per milliliter cutoff to pass a test for cocaine metabolites. *Decision* at *1; App'x 3. After Mr. Cunningham's failed test, the Army flagged Mr. Cunningham and suspended him from flying duties. *Decision* at *1; App'x 3–4, 115; *see* Department of the Army, Army Regulation ("AR") 600-8-2, *Suspension of Favorable Personnel Actions (Flag)* (2016); App'x 43–44.

Mr. Cunningham's case was subsequently referred to the Flying Evaluation Board. *Decision* at *1; App'x 4. On March 23, 2021, the Flying Evaluation Board found by a preponderance of the evidence that Mr. Cunningham "displayed undesirable habits in that he tested positive

---

[1]    We refer to the supplemental appendix filed with the government's informal response brief, ECF No. 8, as "App'x" throughout this opinion.

for . . . cocaine" and recommended terminating his aviation service. App'x 109; *Decision* at \*1. Mr. Cunningham subsequently asked the Appointing Authority to set aside the Flying Evaluation Board's findings and recommendations. *Decision* at \*1; App'x 287–89. To support this request, Mr. Cunningham submitted an opinion from Dr. Jeff Walterscheid, chief toxicologist for the Armed Forces Medical Examiner System, providing new evidence. *Decision* at \*1; App'x 290–91. On September 7, 2021, the Appointing Authority denied Mr. Cunningham's request to set aside the Flying Evaluation Board's findings and recommendations. *Decision* at \*1; App'x 108, 326.

In parallel to Mr. Cunningham's Flying Evaluation Board referral, in February 2021, the Army initiated disciplinary proceedings against Mr. Cunningham under Article 15 of the Uniform Code of Military Justice ("UCMJ") after Mr. Cunningham waived his right to challenge the drug allegations at a court martial. *Decision* at \*1; App'x 106; *see* 10 U.S.C. § 815. After a hearing, the Army found Mr. Cunningham guilty of using cocaine in violation of UCMJ Article 112a and issued him a written reprimand as punishment. *Decision* at \*1; App'x 142, 144. Mr. Cunningham did not appeal this decision, but his counsel submitted a request to set aside the Article 15 findings because of the new evidence from Dr. Walterscheid. *Decision* at \*1; App'x 146–48. On September 7, 2021, Mr. Cunningham's request to set aside the Article 15 findings was also denied. *Decision* at \*1; App'x 6, 326.

In April 2021, the General Officer Show Cause Authority began elimination proceedings against Mr. Cunningham for use of cocaine pursuant to AR 600-8-24. *Decision* at \*2; App'x 6; *see* Department of the Army, AR 600-8-24, *Officer Transfers and Discharges* (2020); App'x 45–83. The General Officer Show Cause Authority recommended that Mr. Cunningham receive a general discharge from the Army with an honorable characterization of his service. *Decision* at \*2; App'x 10. Consistent with this

recommendation, Mr. Cunningham's separation from the Army was approved on June 6, 2022. *Decision* at \*2; App'x 100. On June 30, 2022, the Army issued Mr. Cunningham's certificate of discharge from active duty. *Decision* at \*2; App'x 324.

On December 15, 2022, Mr. Cunningham filed a complaint in the Court of Federal Claims, alleging procedural violations occurred during his elimination proceedings. *Decision* at \*2; App'x 1–15. The Court of Federal Claims concluded that the Army acted in compliance with AR 600-8-24 by denying Mr. Cunningham a board of inquiry because he had not served for three years as a probationary officer. *Decision* at \*3. Next, the Court of Federal Claims found that any alleged procedural errors in the processing of Mr. Cunningham's case were rendered harmless by the Army's reevaluation of Mr. Cunningham's case and the unchanged recommendation to still discharge him. *Id.* at \*4. Lastly, the Court of Federal Claims concluded that there was substantial evidence to support the Army's determination that Mr. Cunningham knowingly used cocaine in violation of UCMJ Article 112a. *Id.* The Court of Federal Claims further concluded that the Army's determination of Mr. Cunningham's guilt complied with AR 27-10. *Id.*; *see* Department of the Army, AR 27-10, *Military Justice* (2020); App'x 20–42. Accordingly, the Court of Federal Claims granted the government's motion for judgment on the administrative record, denied Mr. Cunningham's cross-motion for judgment on the administrative record, and denied the government's motion to dismiss as moot. *Decision* at \*5.

Mr. Cunningham appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II.    DISCUSSION

"We review a decision of the [Court of Federal Claims] 'granting or denying a motion for judgment on the administrative record without deference.'" *Bader v. United*

*States*, 97 F.4th 904, 909 (Fed. Cir. 2024) (quoting *Barnick v. United States*, 591 F.3d 1372, 1377 (Fed. Cir. 2010)). We will not disturb the Army's decision unless "it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Barnick*, 591 F.3d at 1377.

This appeal presents the following issues regarding whether the Court of Federal Claims correctly concluded that: (1) Mr. Cunningham was a probationary employee under AR 600-8-24; (2) any procedural errors that occurred in Mr. Cunningham's elimination proceedings from the Army were rendered harmless when Mr. Cunningham's case was reevaluated; and (3) the Army complied with AR 27-10 and UCMJ Article 112a. We will address each issue in turn.

A.

Mr. Cunningham argues that the Court of Federal Claims did not adequately review the documentation related to his appointment date and incorrectly interpreted and applied AR 600-8-24 in concluding that he was a probationary officer. Appellant's Br. 1–2. Specifically, Mr. Cunningham alleges that the operative date for determining probationary status was when he was appointed as a reserve warrant officer on June 21, 2017, rather than when he was appointed to the Regular Army on June 21, 2019. *Id.*; *see* App'x 322–23 (identifying Reserve and Regular Army appointment dates). Mr. Cunningham further alleges that as a nonprobationary officer he would be entitled to a board of inquiry.[2] Appellant's Br. 2–3; *see* AR

---

[2]    By contrast to probationary officers, nonprobationary officers are entitled to a board of inquiry. "A board of inquiry is a formal hearing procedure wherein the service member may be represented by counsel and present

600-8-24 ¶ 4-18; App'x 56–58. We disagree that Mr. Cunningham is entitled to nonprobationary status.

The Court of Federal Claims correctly held that Mr. Cunningham was a probationary officer not entitled to a hearing by a board of inquiry. The date of Mr. Cunningham's appointment to the Regular Army in the grade of chief warrant officer two was June 21, 2019. *Decision* at *1; App'x 323 ("The existing warrant officer Reserve appointment is vacated upon acceptance of this appointment" to "the grade of Chief Warrant Two."). The Court of Federal Claims also correctly concluded that the relevant end date for determining probationary status is the date that the Deputy Assistant Secretary of the Army issued a final decision regarding Mr. Cunningham's case, rather than the date when Mr. Cunningham received his certificate of discharge from active duty.[3] *Decision* at *3. The Deputy Assistant Secretary of the Army "determined [Mr. Cunningham] will be involuntarily eliminated from the United States Army with an Honorable characterization of service" on June 6, 2022, the date of the final decision in Mr. Cunningham's case. App'x 100; *see* AR 600-8-24 ¶ 4-19(j) ("Action by the [Deputy Assistant Secretary of the Army] acting for [the Secretary of the Army] is final."); App'x 60. In sum, it was less than three years between Mr. Cunningham's appointment to the Regular Army and the final decision by the Deputy Assistant Secretary of the Army.

---

witnesses." *Holley v. United States*, 124 F.3d 1462, 1464 n.1 (Fed. Cir. 1997); *see also* AR 600-8-24 ¶ 4-6; App'x 50.

[3]    *Cf.* AR 600-8-24 ¶ 4-19(c) ("[i]f at any time during the processing of the recommendation (before a *final decision* in the case) the officer no longer meets the probationary criteria," the officer will be processed as a nonprobationary officer) (emphasis added); App'x 60.

Mr. Cunningham's appointment could be terminated without going through a board of inquiry first. The Secretary of the Army "may terminate the regular appointment of any permanent regular warrant officer at any time within three years after the date when the officer accepted his original permanent appointment as a warrant officer in that component." 10 U.S.C. § 1165; *see also* AR 600-8-24 ¶ 4-19(b)(1)–(2) ("A probationary officer is—(1) Any commissioned officer on the [active-duty list] with less than 6 years active commissioned service or a commissioned Reserve officer with less than 6 years commissioned service (see 10 U.S.C. [§] 630). (2) Warrant officers who have less than 3 years' service since original appointment in their present component (see 10 U.S.C. [§] 1165)."); App'x 60. Because "[Mr.] Cunningham's appointment to his most recent component on June 21, 2019, was less than three years before June 6, 2022, when the final decision was issued by the [Deputy Assistant Secretary of the Army] to eliminate him," *Decision* at *3, the Court of Federal Claims did not err in finding that Mr. Cunningham was a probationary officer who is not entitled to a hearing by a board of inquiry.

## B.

Mr. Cunningham argues that the Court of Federal Claims erred and acted in an arbitrary and capricious manner when processing Mr. Cunningham's elimination paperwork under AR 600-8-24 because his original 165-page rebuttal document was lost. Appellant's Br. 3–6, 9. Mr. Cunningham contends that the Army failed to "appropriately" review his documents, Appellant's Br. 4, because the Army "made a decision on over a year[']s worth of legal proceedings in three working days." Appellant's Br. 5. In response, the government argues that this characterization is inaccurate because the Army remedied any errors in the processing of Mr. Cunningham's claim before the Deputy Assistant Secretary of the Army made a final decision. Appellee's Br. 17. We agree with the government.

The Army did not act in an arbitrary and capricious manner and did not commit any prejudicial error in processing Mr. Cunningham's elimination paperwork under AR 600-8-24. "Table 4-2, Steps 3 and 9 [of AR 600-8-24] mandate that upon the initiation of elimination proceedings for a probationary officer, the initiating official must advise 'the officer that he or she has [thirty] calendar days . . . to prepare a written statement or rebuttal' and that the initiating official may take action upon receipt of the statement." *Decision* at \*3 (quoting AR 600-8-24 ¶ 4-19, Table 4-2); App'x 60–61.  There is no dispute that the General Officer Show Cause Authority failed to consider Mr. Cunningham's original written rebuttal statement documents before the initial recommendation of his elimination. *Decision* at \*3; Appellee's Br. 16.  The Court of Federal Claims found that "the administrative record indicates that this error was later discovered and remedied by the Army." *Decision* at \*3.  After Mr. Cunningham acknowledged that the pertinent written rebuttal statements responding to the elimination action were submitted, App'x 102, the Army acknowledged that Mr. Cunningham's rebuttal documents were received on March 23, 2022, App'x 101, and still reached the same conclusion. *Decision* at \*2; App'x 100.  Because the Army came to the same conclusion as its initial recommendation after reviewing Mr. Cunningham's rebuttal statements, any alleged errors in processing Mr. Cunningham's elimination paperwork were harmless.

Mr. Cunningham also argues that the Army committed prejudicial error because it did not properly consider Enclosure 4 of Mr. Cunningham's rebuttal, titled "Article 15 Set Aside Request with Enclosures."  Appellant's Br. 6.  Mr. Cunningham contends that "[t]his proves" the government "cannot properly classify which documentation was submitted" in his appeal. *Id.*  In response, the government argues that "[a]lthough Mr. Cunningham resubmitted the evidence from Dr. Walterscheid in his rebuttal materials,

the record shows that [the Army] had *already* considered the evidence from Dr. Walterscheid in the Article 15 set-aside request." Appellee's Br. 18–19 (emphasis in original) (citing App'x 326).

We agree with the government. AR 27-10 authorizes an Article 15 finding to be "set aside" if punishment has resulted in a "clear injustice"—for example, the "discovery of new evidence unquestionably exculpating the Soldier." AR 27-10 ¶ 3-28(a); App'x 36. However, Mr. Cunningham's set aside request was denied on September 7, 2021, App'x 326, which occurred over five months before Mr. Cunningham resubmitted his materials and the Army received his materials. App'x 102–05; *Decision* at *3. There is substantial evidence showing the Army fully complied with the requirements of AR 600-8-24 before the General Officer Show Cause Authority made its final recommendation regarding Mr. Cunningham's elimination.

## C.

Mr. Cunningham also argues that his removal from the Army violated AR 27-10. Appellant's Br. 7–8 (discussing *Decision* at *4). He urges that he was unlawfully removed under UCMJ Article 112a because he did not knowingly and willingly consume a controlled substance. Appellant's Br. 8. We disagree.

Under AR 27-10, imposition of punishment under Article 15 requires a determination of guilt beyond a reasonable doubt. AR 27-10 ¶ 3-18(l); App'x 30. UCMJ Article 112a mandates that "[a]ny person subject to this chapter who wrongfully uses" cocaine "shall be punished as a court-martial may direct." 10 U.S.C. § 912a(a). The Manual for Courts-Martial ("MCM"), which interprets the UCMJ, explains that "wrongful use" in Article 112a has two elements: "(a) That the accused used a controlled substance; and (b) That the use by the accused was wrongful." MCM Part IV ¶ 50.b(2) (2019); App'x 87–88. "Knowledge of the

presence of the controlled substance is a required component of use." MCM Part IV ¶ 50.c(10); App'x 90. However, "[k]nowledge of the presence of the controlled substance may be inferred from the presence of the controlled substance in the accused's body or from other circumstantial evidence." MCM Part IV ¶ 50.c(10); App'x 90.

The Court of Federal Claims found that Mr. Cunningham's urinalysis test detected cocaine at a value above the cutoff for cocaine metabolites. *Decision* at \*1; App'x 310. There is substantial evidence supporting the conclusion that Mr. Cunningham knowingly ingested cocaine, including the evidence from the urinalysis test. Drawing reasonable inferences from the urinalysis test, the Army's determination that Mr. Cunningham's guilt satisfied the burden of proof was also supported by substantial evidence. Regardless of the new evidence from Dr. Walterscheid, *Decision* at \*1, "courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983). Therefore, although Mr. Cunningham can identify other evidence in the record that could support a contrary conclusion, he has not shown that the Army's decision was unsupported by substantial evidence.

### III.    CONCLUSION

We have considered Mr. Cunningham's remaining arguments and find them unpersuasive. For the foregoing reasons, we *affirm* the judgment of the Court of Federal Claims.

**AFFIRMED**

COSTS

No costs.